

U.S. Department of Justice

United States Attorney
Eastern District of New York

271 Cadman Plaza East
Brooklyn, New York 11201

September 15, 2025

<u>By ECF and E-mail</u>

The Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: United States v. Vickie Smith
     <u>Criminal Docket No. 25-MJ-270</u>

Dear Judge Levy:

  The defendant, Vicke Smith, is scheduled to for an initial appearance today pursuant to Fed. R. Crim. P. 5 today on an indictment issued from the District of Idaho, which charges her with: (i) wire fraud conspiracy, in violation of Title 18, United States Code, Section 1349; (ii) wire fraud, in violation of Title 18, United States Code, Section 1343; (iii) money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h); and (iv) money laundering, in violation of Title 18, United States Code, Section 1957. <u>See</u> ECF No. 4 (Case No. 1:25-cr-00272-BLW, District of Idah). The defendant, along with her co-defendant Tochukwu Godwin Nwaneri, were arrested on September 13, 2025 at John F. Kennedy International Airport just prior to boarding an international flight to Morrocco, continuing on to Abuja, Nigeria. The defendant will make her first appearance this afternoon before Your Honor. The government respectfully submits this letter in support of its application for an order of detention.

  As described below and in the indictment, the defendant and her co-defendant, Nwaneri, perpetrated an advanced-fee fraud scheme that resulted in more than $20 million of losses by a victim located in the District of Idaho. Detention is necessary here because the defendant presents a serious risk of flight due to the nature of the charged conduct, the penalties she faces, and the strong evidence of her guilt, the history and characteristics of the defendant, and her apparent international ties.

I. <u>Legal Standard</u>

  Under the Bail Reform Act, 18 U.S.C. § 3141 <u>et seq.</u>, federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence, <u>United States v. Ferranti</u>, 66 F.3d 540, 542 (2d Cir. 1995), and risk of flight must be proven by a preponderance of the evidence, <u>United States v. Jackson</u>, 823 F.2d 4, 5 (2d Cir. 1987).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

II.     Proffered Facts Regarding the Defendant's Crimes

The government proffers the following facts concerning the charges at issue and pretrial detention. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (the government is entitled to proceed by proffer in a detention hearing).

Beginning in or around August 2023 and continuing through present, the defendant participated in an advanced fee fraud scheme targeting the victim, business owner in Caldwell, Idaho. Beginning in or around mid- 2023, the victim began seeking funding for his businesses through debt financing. The victim was introduced to Smith's co-defendant, Nwaneri, who was posing as "Dr. Simon Godwin." Nwaneri claimed he could facilitate a $140 million loan from a Singapore-based investment group in exchange for various advance fee payments. Smith, using the name "Nina Cheliyan," posed as, among other things, an underwriter for the Singapore group that was purporting to fund the loan to the victim. Between November 2023 and April 2025, Smith and Nwaneri tricked the victim into sending more than twenty wire transfers to various domestic and foreign bank accounts, totaling more than $20 million. Nwaneri and Smith provided the victim with various false explanations about the purposes of the funds including payments for multiple risk analysis reports, "logistic fees," 2% bond requirements, legal fees, and fees to release the purported funds from various bank accounts. In reality, as Nwaneri and Smith knew, there were no loan funds to be disbursed to the victim and the various payments the victim sent pursuant to the defendants' instructions were used for the defendant's personal expenses, purchase of assets such as luxury cars and real property, and transferred to foreign bank accounts, including accounts in the United Kingdom, China, and Nigeria.

III.    Argument

Here, the Bail Reform Act factors counsel strongly in favor of detention. The government has met its burden to show by a preponderance of the evidence that if released, the defendant poses a serious flight risk.

A.      Nature of the Crimes Charged

The nature and circumstances of the charged crimes —wire fraud conspiracy, money laundering conspiracy, wire fraud, and money laundering — are very serious. The defendant, using a false name to conceal her identity, participated in a fraud scheme to defraud the victim by stealing more than $20 million. The defendant and her co-defendant, Nwaneri, directed the victim to transfer funds to numerous different accounts — including an account held in the name of a purported charity, an account held in the name of a purported marketing company controlled by Smith— and then frequently transferred those funds to other accounts

2

to conceal the location, source, and nature of those funds. Other times, the defendants used the funds to purchase assets such as a Mercedez Benz, Range Rover, BMW, and real property. The defendants lied to the victim, claiming that the victim was under investigation by foreign authorities in order to pressure the victim into continuing to send funds. And even once the fraud was detected in May 2025 by legal authorities abroad and in the U.S., the defendants urged the victim to lie to the authorities in an effort to continue obtaining funds from the victim and told the victim he would go to jail if he told the truth. The defendants also pressured the victim to lie to his domestic banks about the source of the funds and to send letters explaining that the funds he transferred to the defendants were for legitimate purposes.

  B. The Weight of the Evidence

The evidence that the defendants defrauded the victim through an advanced fee scheme is strong. The evidence in this case includes: (1) witness testimony and records about the fraudulent conduct; (2) audio recordings; (3) WhatsApp and email communications; and (4) IP address records. See United States v. Rounds, 2015 WL 6604007, at *1 (2d Cir. Oct. 30, 2015) (finding that the "gravity of the charges and the strength of the evidence on which [the defendant's] detention was based . . . counsel[s] against release.").

  C. The Defendant's History and Characteristics

The history and characteristics of the defendant counsel in favor of detention. Although the defendant has no known criminal history in the United States, as described in further detail below, the defendant used a false identity to perpetrate this scheme, has a Nigerian passport, frequently travels internationally, including to Nigeria, and does not appear to have any legitimate form of employment in the United States. See United States v. Rowe, No. 02 CR. 756 LMM, 2003 WL 21196846, at *2 (S.D.N.Y. May 21, 2003) (ordering detention despite defendant's limited criminal history).

  D. The Defendant Poses a Risk of Flight

The defendant represents a particular flight risk because she faces significant jail time, appears to have significant foreign ties, and appears to have access to large amounts of capital to support her flight.

First, "[t]he prospect of a severe sentence can create a strong incentive for a defendant to flee and thereby avoid that sentence." United States v. Zhang, 55 F.4th 141, 151 (2d Cir. 2022). Here, assuming that the defendant falls within Criminal History Category I, the government's preliminary Guidelines estimate for the charged crimes is 97 to 121 months' imprisonment. As noted above, the evidence supporting these serious charges is strong. Given the jail time that the defendant faces upon conviction, she has a strong incentive to flee the jurisdiction. See United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) ("[E]ven if, as a practical matter, Khusanov's maximum sentence exposure were only 15, rather than 30, years' imprisonment, that would still be sufficient to provide him with a strong incentive to flee."); United States v. Blanco, 570 F. App'x 76, 77 (2d Cir. 2014) (affirming district court's order of detention where defendants face lengthy term of imprisonment); United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) ("possibility of a severe sentence" heightens the risk of flight).

Second, where, as here, the evidence of a defendant's guilt is strong, "it follows that the defendant faces an elevated risk of conviction (and of the attendant punishment), and therefore may present an elevated risk of flight." Zhang, 55 F.4th at 151; United States v. Sabhnani, 493 F.3d 63, 76 (2d Cir. 2007) (finding detention appropriate because, in part, "the evidence of [the defendants'] guilt, both direct and circumstantial, appears strong"); United States v. Bruno, 89 F. Supp. 3d 425, 431 (E.D.N.Y. 2015) (Kuntz, J.) ("When evidence of a defendant's guilt is strong, and when the sentence of imprisonment upon conviction is likely to be long a defendant has stronger motives to flee."). The evidence of the defendant's guilt is overwhelming. The allegations in the indictment—which make up just a portion of the government's proof—are largely drawn from records obtained over the course of the ongoing investigation, including bank records, WhatsApp communications, audio recordings, witness testimony, and email communications that are tied to the defendants.

Third, although the defendant appears to have some ties to the United States — namely, a potential residence in Arizona— she has no known form of legitimate employment in the United States. The defendant has four adult children in the United States from a previous marriage. Furthermore, the defendant's ties abroad provide her with an additional incentive to abscond. At the time of her arrest, in addition to a U.S. passport, the defendant had in her possession a Nigerian passport issued in her name. She also had a passport from the Republic of Guyana issued in the name of "Dericka Mc Callum-Prescott" which appears to bear Smith's photograph. Similarly, she had a driver's license from the Republic of Guyana issued in the name of "Dericka Mc Callum" but also bearing what appears to be Smith's photo. It is unknown whether the defendant has other forms of identification that she could use to travel domestically or internationally but, based on the two forms of identification documents bearing someone else's name that she had in her possession, the defendant appears to have the ability to obtain false identity documents. Furthermore, it is also unknown whether the defendant has the ability to obtain other identity documents should she be required to surrender her passports. Smith also appears to have attempted to conceal the location of her residence in Arizona by using a UPS store as her address on her driver's license and providing that same address to Customs and Border Patrol during her arrest despite admitting, during a post-arrest interview, that she maintained an actual residence in Arizona. Furthermore, the defendant's ties abroad provide her with an additional incentive to abscond. The defendant frequently traveled internationally. For example, in 2024 and 2025, travel records indicate that the defendant traveled to Nigeria six times, Guyana, the United Kingdom, Central African Republic, China, Malaysia, Jamaica, Japan, Mexico, and Uganda.

Given the serious penalties she faces, she has a strong incentive to flee. See Boustani, 932 F.3d at 83 (upholding detention of defendant charged with fraud as flight risk due to the strength of the government's evidence and the defendant's "alleged deceptive actions, access to substantial financial resources, frequent international travel, complete lack of ties to the United States, and extensive ties to foreign countries without extradition"); United States v. Liebowitz, 669 F. App'x 603, 605 (2d Cir. 2016) ("the lengthy jail sentence that could be imposed for the charged crimes provides an incentive to flee [and] the likelihood of flight is reinforced in this case by that fact that Liebowitz holds Australian as well as United States citizenship and has family members in Australia"); United States v. Baig, 536 F. App'x 91, 93 (2d Cir. 2013) (affirming detention order

in part because the defendant "though a permanent resident of the United States, is a citizen of Pakistan and maintains ties there"); United States v. El-Hage, 213 F.3d 74, 80 (2d Cir. 2000) (noting that a defendant's "history of travel and residence in other countries" is a factor that has been long-approved by the Second Circuit in determining whether a defendant should be detained); United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond to Mexico).

Fourth, the defendant has the means and international connections to flee if she chooses to do so. See Sabhnani, 493 F.3d at 76 ("a second factor strengthens the case for detention: defendants' ample means to finance flight"). The defendants obtained more than $20 million of victim funds and millions of dollars of those funds were transferred to foreign bank accounts, including transfers to bank accounts held in the defendants name or controlled by the defendant in Nigeria. The defendant's ties to a foreign jurisdiction (Nigeria), and her apparent ready access to these large sums of money could support her flight. Given her resources and the penalties she faces, the Court should deny any application for pretrial release in this case. See, e.g., Liebowitz, 669 F. App'x at 605 (finding that the defendant posed a flight risk where "the record shows his access to substantial resources to finance flight"); United States v. Epstein, 425 F. Supp. 3d 306, 324 (S.D.N.Y. 2019) (finding defendant was "classic flight risk" given his "limited family ties to the United States, his residence in Paris, his extensive overseas travel, his significant wealth and his substantial resources (including private planes), and the potential 45 year term of imprisonment that may be imposed should there be a conviction in this case"); United States v. Zarrab, 2016 WL 3681423, at *8 (S.D.N.Y. June 16, 2016) (citing the defendant's "significant wealth and his substantial resources" as another factor that supported detention).

IV. Conclusion

For these reasons, the government respectfully submits that it has demonstrated, by at least a preponderance of the evidence, that the defendant poses a significant risk of flight and respectfully requests that the Court enter a permanent order of detention.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/
Andy Palacio
Assistant U.S. Attorney
(718) 254-76215

cc: Clerk of Court (RML)
Defense Counsel (via ECF and email)