Katryna Lyn Spearman, Esq.
Ga. Bar # 616038
kspearman@lowtherwalker.com

Murdoch Walker, II, Esq.
Ga. Bar # 163417
mwalker@lowtherwalker.com

Lowther | Walker, LLC
101 Marietta St. NW, Ste. 3650
Atlanta, GA 30303
O 404.496.4052 | F 866.819.7859
www.lowtherwalker.com

Randi L. Johnson, Esq.
Idaho Bar # 10739
rjohnson@gravislaw.com

Gravis Law, PLLC
1309 W. Dean Avenue, Ste. 100
Spokane, WA 99201
O 509.608.3083

Attorneys for Defendant
Vickie Smith

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff, | Case No. 1:25-CR-00272-BLW-1 |
| v. | NOTICE OF APPEAL OF DETENTION ORDER AND MOTION FOR DETENTION HEARING |
| VICKIE SMITH | |
| Defendant. | |

1

Ms. VICKIE SMITH, pursuant to 18 U.S.C. § 3142(f)(2) and D. Idaho Crim. R. 46.1(d) respectfully notifies this court of an appeal of her detention order and moves this Court to hold a detention hearing.

## I.    Relevant Procedural History

On September 9, 2025, a federal grand jury in this district indicted Ms. Smith on one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, twenty-eight counts of wire fraud in violation of 18 U.S.C. § 1343, one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h), and forty counts of money laundering in violation of 18 U.S.C. § 1957. (Indictment, ECF No. 4)

On September 15, 2025, the United States District Court for the Eastern District of New York ordered that Ms. Smith be detained pending a detention hearing. (*United States of America v. Vickie Smith, et al.*, No. 1:25-mj-00270-RML-1 (E.D.N.Y. Sept. 15, 2026), Order Scheduling a Detention Hr'g, ECF No. 6.) On September 16, 2026, the Government filed a letter detention memo. (*United States of America v. Vickie Smith, et al.*, No. 1:25-mj-00270-RML-1 (E.D.N.Y. Sept. 15, 2026), Letter re Detention Memo, ECF No. 7.) On that same day, E.D.N.Y. held a detention hearing and ordered that Ms. Smith be detained pending trial. (*United States of America v. Vickie Smith, et al.*, No. 1:25-mj-00270-RML-1 (E.D.N.Y. Sept. 15, 2026), Mins, Sept. 16, 2025.)

On October 21, 2025, the government filed a motion for detention. (ECF No. 15.) On October 22, 2026, this Court ordered that the detention order issued by E.D.N.Y. stands. (Mins., ECF No. 16.)

## II.    Memorandum of Law & Factual Assertions

"The [detention] hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). "The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

"The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning— (1) the nature and circumstances of the offense charged . . . (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)

The Bail Reform Act reflects a strong legislative preference for release under the least restrictive conditions necessary to reasonably assure appearance and the safety of any other person in the community. 18 U.S.C. § 3142(c)(1)(B).

Ms. Smith presents the following information, which has material bearing on the issue of whether there are conditions of release that will reasonably assure her appearance and the safety of any other person and the community:

### a.     History and Characteristics of Ms. Smith

Ms. Smith is sixty-seven years old, chronically ill, and disabled; she is diagnosed with Lupus, Sjögren's Disease, glaucoma, and rheumatoid arthritis. She has a pacemaker, severe food insensitivities, requires supplemental oxygen, and must use a walker to move around. For these issues, Ms. Smith takes a complex daily regimen of amlodipine besylate, montelukast, atorvastatin, cetirizine, and clopidogrel, along with other supplemental medications as needed. Ms. Smith is currently housed at Ada County Jail in Boise, Idaho.

Lupus is a chronic autoimmune disease that causes the body's immune system to mistakenly attack its own healthy cells and tissues, leading to inflammation and damage in organs or systems. United States Centers for Disease Control and Prevention ("CDC"), *Lupus Basics*, (May 15, 2024), https://www.cdc.gov/lupus/about/index.html. Rheumatoid arthritis is an autoimmune form of arthritis that causes pain, swelling, and stiffness in joints. Medline Plus, *Rheumatoid Arthritis*, National Library of Medicine, (Sept. 13, 2025), https://medlineplus.gov/rheumatoidarthritis.html. Sjogren's syndrome is a secondary autoimmune disorder that is common in people with diseases such as rheumatoid arthritis and lupus, which causes chronic dry eyes and mouth, as well as joint and muscle pain. Medline Plus, *Sjogren's Syndrome*, National Library of Medicine, (Jan. 30, 2024), https://medlineplus.gov/sjogrenssyndrome.html. Glaucoma is a group of diseases that damage the eye's optic nerve and can result in vision loss and even

blindness. CDC, *About* Glaucoma, (May 15, 2024), https://www.cdc.gov/vision-health/about-eye-disorders/glaucoma.html.

These illnesses combined leave Ms. Smith's health in a very precarious place. Should she go without proper treatment for them, it could result in extreme pain, heart issues, kidney problems, lung problems, blindness, or even death. CDC, *Lupus Basics*, (May 15, 2024), https://www.cdc.gov/lupus/about/index.html; Medline Plus, *Rheumatoid Arthritis*, National Library of Medicine, (Sept. 13, 2025), https://medlineplus.gov/rheumatoidarthritis.html; Medline Plus, *Sjogren's Syndrome*, National Library of Medicine, (Jan. 30, 2024), https://medlineplus.gov/sjogrenssyndrome.html; CDC, *About* Glaucoma, (May 15, 2024), https://www.cdc.gov/vision-health/about-eye-disorders/glaucoma.html.

Ms. Smith has had extreme difficulty receiving the care that she needs while housed at Ada County Jail. She has regularly not received her daily medications and has been deprived of food that meets her dietary restrictions. In one instance, officers forced Ms. Smith late at night to transfer to a unit where she knew she would not receive the medical care she required. They prevented her from using her walker and oxygen on the journey there and instead pushed her in a very low wheelchair, causing Ms. Smith extreme pain. Ms. Smith has lost almost fifty pounds since being transferred to Ada County Jail and is very concerned about her health going forward, should she remain there.

Ms. Smith's attorney has contacted both Ada County Jail and the United States Marshals Service ("USMS") to express her concerns about Ms. Smith's health. On May 15, 2026, Ms. Smith's attorney confirmed that the USMS has approved Ms. Smith to attend two doctors' appointments outside of Ada County Jail, one with a rheumatologist and another with a gynecologist. However, to this date, Ms. Smith has not been able to attend either appointment; in fact, it appears Ada County Jail has not even scheduled these appointments, which are vital to Ms. Smith's health.

This exclusion is not an exception to the rule of prisons treating disabled individuals fairly, but instead a symptom of a larger pattern in the prison system. The Americans with Disabilities Act requires prisons to avoid discrimination; individually accommodate disability; maximize integration of prisoners with disabilities with respect to programs, services, and activities; and provide reasonable treatment for medical and mental-health conditions. Margo Schlanger, *Prisoners with Disabilities*, *in* Reforming Criminal Justice: Punishment, Incarceration, and Release, 295, 295–323 (Erik Luna ed., 2017). However, in practice, prisoners with disabilities very routinely face significantly more challenges while in prison than their peers. Laurin Bixby et al., *The Links Between Disability, Incarceration, and Social Exclusion*, 41, Health Affairs, 1460 (2022). In addition to the high risks of incarceration experienced by disabled people, being incarcerated can exacerbate existing disabilities. *Id.* The physical and social environments of prisons and jails, characterized by high levels of stress and violence, are disabling. *Id.*

Should Ms. Smith be transferred to another facility, there is no guarantee she will receive the medical care she needs while there, and, statistically, she likely will not. Given Ms. Smith's many conditions, continuing to go without proper medical care might result in her experiencing extreme pain, losing her vision, or, in a worst-case scenario, even death. Therefore, Ms. Smith respectfully requests that she be released on strict conditions of home detention, where she and her family can properly manage her care.

### b.     Nature and Circumstance of The Offense & Weight of The Evidence

#### 1.     Nature and Circumstances

The crimes of which Ms. Smith is accused are serious. However, they are exclusively financial crimes, nonviolent, and do not involve minor victims, controlled substances, or any destructive devices. There are clearly potential conditions of release that negate any risk that might stem from the nature and circumstances of Ms. Smith's offense.

#### 2.     Weight of The Evidence

Ms. Smith acknowledges that the court must consider the information concerning the weight of the evidence. 18 U.S.C. § 3142(g)(2). But even assuming arguendo that the evidence is what it purports to be, "the weight of the evidence is the least important of the various factors, as the statute neither requires nor permits a pretrial determination that the person is guilty." *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (internal marks omitted) (emphasis added).

Ms. Smith submits that the weight of yet-to-be-examined and rebutted evidence is always strong in the early stage of a criminal proceeding. The weight of the evidence in this case, even assuming, arguendo, that it is strong, is not extraordinary: it is typical of any alleged fraud scheme, and has no specific or material bearing on the issue of Ms. Smith being a flight risk. Indeed, if undue weight were given to this factor, no defendant would be released on bond pretrial in fraud cases.

### c.    Danger to Persons or Community

To detain Ms. Smith on the grounds of dangerousness, the government must demonstrate by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. 18 U.S.C. §§ 3142(e) and (f). This is a demanding standard, and it is the government's burden to carry it, not Ms. Smith's burden to disprove it.

The government has plainly not proven that Ms. Smith is a danger to anyone, and argues in its memorandum exclusively that Ms. Smith poses a risk of flight. *United States of America v. Vickie Smith, et al.*, No. 1:25-mj-00270-RML-1 (E.D.N.Y. Sept. 15, 2026), Letter re Detention Memo, ECF No. 7. Furthermore, Ms. Smith's charges, though serious, are nonviolent. Ms. Smith is a sick woman in her late sixties. The Government has not demonstrated that Ms. Smith poses a danger to anyone because it knows she does not.

**d.      Risk of Flight**

The risk of flight or danger to the community must be of a nature that no condition or combination of conditions could mitigate—a limited category reserved for the most dangerous of offenders. *Salerno*, 481 U.S. at 747. In its detention memorandum, the government argues that Ms. Smith poses a risk of flight due to her international connections. *United States of America v. Vickie Smith, et al.*, No. 1:25-mj-00270-RML-1 (E.D.N.Y. Sept. 15, 2026), Letter re Detention Memo, ECF No. 7. Though Ms. Smith did often travel internationally in the past, her connections overseas are limited. Here in the United States, Ms. Smith has four adult children whom she speaks with regularly and loves very dearly, several of whom have offered their homes as potential places for Ms. Smith to be confined pending trial. Ms. Smith's children are aware of the charges Ms. Smith faces and remain very supportive of their mother.

What the government does not take into account when assessing the risk of flight in its memorandum is Ms. Smith's physical disability. Plainly, given Ms. Smith's present delicate medical condition and her use of a walker, it will be extremely difficult for her to move between the rooms of her house, much less flee the country. Should she be released pending trial, Ms. Smith explicitly consents to strict conditions of home confinement, including confinement to her residence at all times outside of doctors' appointments and court appearances, location monitoring, and preventing her access to the internet.

Ms. Smith submits that she is not a flight risk. However, should this Court decide Ms. Smith's risk of flight is too high, Ms. Smith respectfully requests that this Court

order that she be transferred to a medical center so that she can receive appropriate care for her chronic illness.

## IV.    Opposing Party's Position

The Government <u>does not</u> oppose Ms. Smith's transfer to a medical center.

The Government <u>opposes</u> Ms. Smith's release to home detention.

## V.    Conclusion

Ms. Smith, based on the foregoing factual assertions and argument, prays that this Court hold a detention hearing.

Date:   June 16, 2026

           Respectfully submitted,

           ***s/ Katryna Lyn Spearman***
           Katryna Lyn Spearman, Esq.

           ***s/ Murdoch Walker, II***
           Murdoch Walker, II, Esq.

           ***s/ Randi L. Johnson***
           Randi L. Johnson, Esq.